23 C.C.P.A.(Patents)

## DAVIS v. MACLACHLAN (two cases).

### Patent Appeals Nos. 3590, 3591.

Court of Customs and Patent Appeals.

Feb. 17, 1936.

Rehearing Denied March 23, 1936.

E. Clarkson Seward and L. W. Hawley, both of New York City, for appellant.

Eakin & Avery, of Akron, Ohio (Willard D. Eakin and Guy A. Winkjer, both of Akron, Ohio, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This case involves two appeals which were consolidated into one record, and only one brief by each party was submitted.

The appellant, Davis, has appealed from the decision of the Board of Appeals of the United States Patent Office which awarded priority of invention of the six counts of interference No. 61,395 (Patent Appeal No. 3590) and the single count of interference No. 61,396 (Patent Appeal No. 3591) to the appellee, Maclachlan.

Counts 2 to 6, inclusive, of interference No. 61,395 were originally counts in an interference, No. 61,400, which was consolidated with interference No. 61,395. Count 1 of interference No. 61,395 and the single count of interference No. 61,396 are regarded as illustrative of the counts at bar and follow:

Interference No. 61,395: "1. A hose comprising a body of rubber-like material and having a plurality of spirally wound layers, said layers being wound in opposite directions whereby the convolutions cross each other and at least one of said layers being formed of metallic mesh material and being embedded in the rubber-like material."

Interference No. 61,396: "A hose comprising a body of rubber-like material having embedded therein a plurality of separated spirally wound layers of metallic mesh material, one of the layers being wound in one direction and another layer being wound in the opposite direction."

We deem it of no further importance, in view of our conclusions and what will appear hereinafter, to devote more space to the origin and history of the counts, except to say that count 1 of interference No. 61,395, the construction of which is the subject of much controversy as will hereinafter appear, originated as a claim in the Davis application.

The invention relates to reinforcing hose intended to conduct fluid under high pressure. Appellant, Davis, has copied from the Maclachlan brief before the board a statement concerning the use of the hose which we quote here as follows:

"The hose is intended for the unusually severe use of oil well drilling, a typical installation being in a "rotary" drilling rig, as illustrated in the sketch of Maclachlan's Exhibit A-5.02. (R. p. 654). In this use the hose conducts fluid under high pressure from a pump into the top of a vertically movable and rotatable hollow drill stem to force the fluid through the stem deep into the ground to the bottom of the drill stem where the fluid facilitates the drilling and carries the drilled material upward along the outside of the stem.

"As the wells are often drilled very deep, the fluid pressure to which the hose is subjected is exceedingly great, especially when waterhammers occur, and in view of this and the further considerations that the hose is subjected to the intermittent pressure of pump pulsations, and has to

withstand the fluid pressures in a condition of flexure and while undergoing flexure, the construction must be very rugged. * * *

"Accordingly, the Examiner of Interferences has properly held that in view of the very severe purpose intended, nothing short of actual service operation of the hose can constitute an actual reduction to practice."

The important feature of the invention in all the counts at bar, which is emphasized in the claims and the specifications of the applications of both parties, is in a hose, partly of rubber-like material, which comprises a plurality of layers wound in opposite directions so as to cross each other, one layer (two or more layers being the preferred form of both parties) of which, at least, must be of meshed metal material, into the meshes of which the plastic rubber becomes embedded. The spiral winding of the two layers, wound in opposite directions and crossing each other, has the effect of balancing torsional or bursting strains, which strains, resulting from very high pressure, would cause bursting between the edges of the internal tape.

Count 1 of interference No. 61,395, above quoted, calls for a plurality of spirally wound layers, the layers being wound in opposite directions, at least one of which layers should be formed of metallic mesh and which metallic mesh layer must be embedded in the rubber-like material. All the other counts of said interference, and the single count in interference No. 61,396, call for the insertion in the body of the hose of a metallic fibrous material in the form of a plurality of layers, ribbons, or braids, wound in opposite directions.

Davis is the senior party, having filed his application on March 6, 1929. Maclachlan, having filed his application on March 14, 1930, is the junior party, and therefore has the burden of establishing that he was the first inventor.

The party Davis was a consulting engineer associated with the New York Rubber Company of Beacon, N. Y., which company is the assignee of Davis, and the party Maclachlan was a development engineer employed by the B. F. Goodrich Company, which company is the party in interest of the Maclachlan application. The record shows that before Davis had any conception of the invention of the counts at bar, Maclachlan had been experimenting and producing high-pressure hose for use in drilling oil wells, which hose he claims responds to the terms of one of the counts here involved and hereinafter frequently referred to. In the body of this hose were layers of rubber and cloth and a layer of spirally wound bead wire or metallic mesh, and on the outside of said hose was helically wound half-round wire with spacing of about one-half inch between the helices, and which winding was in opposite direction to the spiral winding of the embedded mesh or bead wire. It is also shown that the B. F. Goodrich Company went into production of this kind of hose and sold the same, to a considerable extent, for use in the oil drilling industry, but that this hose did not meet with the success desired on account of its failure to resist the high pressures encountered. It is not questioned, however, that for certain purposes this hose was suitable. Maclachlan's later efforts to produce, and his acts in connection with the production of, a hose having internally two layers of helically wound metal mesh wound in opposite directions, will be discussed later.

The record is quite clear as to Davis' activities in producing the hose for which he filed his application for patent on March 6, 1929, and there is not much dispute between the parties concerning the same.

The Examiner of Interferences gave Davis a date of conception of the invention in the counts at bar at least as early as September 12, 1928, and held that he had reduced the same to practice by February 12, 1929. These dates for conception and reduction to practice were approved by the Board of Appeals and are not seriously questioned here.

There is no question in this case concerning the right of either party to make the counts at bar. Both claim the same invention and both fully disclosed the same in their applications.

The Examiner of Interferences held that the early work of Maclachlan resulted in completely reducing to practice the subject matter of count 1 of interference No. 61,395 at least as early as August 25, 1928, and that Maclachlan therefore was entitled to an award of priority in the invention of said count 1. The Examiner of Interferences, however, held that as to counts 2 to 6, inclusive, of interference No. 61,395, and the single count of inter-

ference No. 61,396, which call for two or more opposite helical windings of metallic mesh in the body of the hose, no hose responding to these counts had been built by Maclachlan prior to November 10, 1928, and that he had not tested the same and found it to be satisfactory prior to Davis' reduction to practice on February 12, 1929, and that Maclachlan, as to the invention involved in said last-named counts, even though he had conceived the invention as claimed on November 1, 1927, was not diligent just prior to the time when Davis entered the field on September 12, 1928. The Examiner of Interferences therefore awarded counts 2 to 6, inclusive, of interference No. 61,395, and the single count of interference No. 61,396, to Davis.

The Board of Appeals, where any opinion was expressed, did not differ with the dates accorded and the main facts found by the Examiner of Interferences. It agreed with his construction of said broad count 1 of interference No. 61,395, concurred in his award of priority of the subject-matter of this count to appellee, Maclachlan, but reversed his holding as to the other six counts involved in the two interferences. It did not find that Maclachlan was actually diligent in reducing to practice the subject-matter of the particular invention involved in said six counts just prior to the date when Davis entered the field, although it did hold, for reasons hereinafter stated, that there was no lack of diligence in this respect chargeable to Maclachlan. After agreeing with the construction of said count 1 of interference No. 61,395, it held that it was bound by the authority of the case of Deakin v. Schwartz, 44 App.D.C. 258, which, as it interpreted said decision, held that diligence as to a generic invention may be credited to another specific form of the invention; that is to say, Maclachlan having been diligent in perfecting his invention as to the hose having one interior layer of metal wound in one way, and an outer winding of wire wound in the opposite direction, this diligence justified a finding that he was diligent, at the time Davis entered the field, in perfecting the invention embodied in the other counts at bar.

In view of our construction of the meaning of the language found in count 1 of interference No. 61,395, it is not necessary for us to discuss at length the case of Deakin v. Schwartz, or to point out in detail why the facts at bar there are not on all fours with the facts here. That case is authority for the proposition that an inventor who actually reduces to practice counts involving a broad invention is entitled to have such diligence as is shown in perfecting such invention inure to his benefit, where his diligence is questioned in connection with the invention in other counts to specific forms of the same invention, and where he is claiming both forms of the invention.

We are in disagreement with the Board of Appeals as to the meaning to be attached to the language used in said count 1 of interference No. 61,395, and we do not think that the instant record supports the contention of the appellee or the finding of the board that Maclachlan, at a time just prior to Davis' entering the field, was diligent in the completion of the inventive subject-matter of said count. It is our view that the hose produced, sold, and tested by Maclachlan prior to the entrance into the field by Davis, which hose comprises one layer of metallic mesh in the body of the same, and the externally wound half-round wire, does not meet the requirements of count 1. If this is true, as we shall proceed to demonstrate, the holding in the Deakin Case, supra, where there were broad claims and specific claims for the same invention involved, has no application here, and the finding of the Examiner of Interferences as to appellee's lack of diligence was correct. If we are correct in this view, it follows that the same lack of diligence would also prevent an award of priority to appellee of the invention defined in said count 1 of interference No. 61,395.

Concerning the construction of said count 1, appellant here makes two contentions: First, that in the light of his application, in which the count arose, we must so construe it that both spiral layers must be embedded in the body of the hose; second, that the term "layers" used in the count cannot be held to include the external wrapping of half-round wire.

We do not concur with appellant in his first contention, since no such limitation can reasonably be found in the plain language used. To so hold would be, in effect, to take the last phrase in the claim, "being embedded in the rubber-like material," and place it just after the term "spirally wound layers." This we may not do. In this respect we agree with the board.

The board, however, did not discuss the appellant's second reason why the early hose produced by appellee does not respond to the terms of the count. It will be noticed that the count provides as follows: "and having a plurality of spirally wound *layers* [italics ours]." In order that the early hose produced by Maclachlan meet the requirements of this count, the winding of the wire on the outside of the hose (which winding, by the way, was in a direction opposite to that of the embedded metal layer) must be regarded as a *layer*. The claim does not call for two layers of mesh, but it does call for two *layers* wound in a particular way. We do not think that the helical winding on the outside of the hose of half-round wire, the helices being about one-half inch apart, constituted a "layer" in the sense that that term was used by Davis in the claim in his application or in the ordinarily commonly accepted sense of the term, There seems to be some little controversy between the parties as to the exact distance between the helices of appellee's half-round wire. As we see it, it would make no difference in our conclusion whether we accepted the distance urged by appellant or that urged by appellee.

Webster's New International Dictionary (1922) defines "layer" as: "2. That which is laid; a stratum; a bed; one. thickness, course, or fold laid over or under another; as, a *layer* of clay or of sand in the earth; a *layer* of bricks, or of plaster; the *layers* of an onion."

Just how far apart the half-round wire could be placed and still result in a layer, appellee, during the hearing here, was not able to satisfactorily explain. Also it must be noted that in the latter part of the count it is provided that one of said *layers* be formed of metallic mesh material and be embedded in the rubber-like substance. Neither of the parties contemplated that such a *layer* could consist of nothing more than a helical winding of half-round wire such as was placed on the outside of appellee's hose. Appellant urges that by this count he meant to have two layers of helically wound materials, wound in opposite directions, in the body of the hose, and that this count was intended as a broad count to prevent some one from making one of the layers of mesh and the other layer of some equivalent material like plain metallic ribbon and thus be enabled to deprive the appellant of the benefits of his invention.

While there is much merit in appellant's contention as to what he intended to do, we cannot read such a limitation into the plain language used; but, in any event we are certain that the inventor intended that there must be at least two *layers*, involved in the construction of the hose, wound in opposite directions, and we regard it as far-fetched to contend that the said wire winding on the outside should be regarded as a layer. Appellee's application drawings show two metallic layers wound spirally in opposite directions in the interior of the hose, and his specification describes and points out the benefit of such a construction. In addition to this, appellee states that:

"* * * if desired, the hose may be provided exteriorly with metal armour, preferably in the form of overlapped and interlocked helical convolutions of a metal strip 21 which in section is ogee or reverse-curve form.

"Although my improved hose, as illustrated herein embodies my preferred construction for a particular purpose, its structure may be variously modified in the arrangement and character of its fabric plies and rubber plies to adapt it to other situations, its novelty residing primarily in the structural features and arrangement of its reinforcing layers 14, 15. [The numerals refer to the two opposite wound layers of metal mesh embedded in the hose.]"

It is true that as originally filed, appellee's application contained a claim or claims which might be regarded as broad enough to cover a hose which had only one helical winding of one strip or ribbon of metallic material, but nowhere in the application is there the slightest suggestion that the outside protective winding, such as the half-round wire wrapping, was regarded as one of the reinforcing layers such as he characterizes numerals 14 and 15 which appear in his drawings.

The outside half-round wire winding was not, by Maclachlan in his application, suggested as taking the place or serving the purpose of any opposite winding of material intended to obviate the hose bursting by reason of torsional strains. It seems reasonable to conclude, however, that such outside reinforcing wire would, to some extent, tend to reinforce the hose in this respect. Maclachlan himself, referring to this feature of the wire wrapped hose, testified: "It was for protection against rough

handling and scraping against the derrick in raising and lowering which was being discussed, and not the matter of internal reinforcements." Maclachlan's witness Bedur stated: "The purpose of the external wire was to afford additional protection to the outside of the hose, which from observation we found was needed to protect the hose from abuse 'in hard service." In one of Maclachlan's exhibits, a factory report, the following appears: "In regard to the wire winding placed on the outside of the construction, we wish to say that this winding was only placed on the hose to meet the requirements of the majority of users of this hose. It was not put on to improve the construction or to strengthen the same."

In view of all the foregoing, it would seem that there is no warrant for holding that the said external winding of half-round wire may be said to constitute one of the "plurality of spirally wound layers" as called for in said count 1 of interference No. 61,395.

■ Having arrived at the conclusion that appellee's early construction does not meet the requirements of said count 1, there is no justification for holding that his diligence in connection with this structure inures to his benefit in connection with the subject-matter of the other counts. We agree with the Examiner of Interferences that Maclachlan has shown a lack of diligence in reducing to practice the invention defined in counts 2 to 6, inclusive, of interference No. 61,395 and the single count in interference No. 61,396, and we further conclude, in view of what we have said, that there also was the same lack of diligence shown as to said count 1 in interference No. 61,395.

Maclachlan makes it clear why he delayed about attempting to produce the hose which he later produced and described in his application. He stated in substance that he concluded ("erroneous as later proved") that the cost would be prohibitive in view of the additional expense and machinery for making the windings.

Upon the record before us, appellee, if first to conceive, was the last to reduce to practice, the subject-matter of the counts. That he was not diligent at the time just before appellant entered the field cannot be seriously questioned upon this record (in view of our above conclusions as to the construction of said count 1 of interference No. 61,395), and it is only by virtue of the misapprehensions hereinbefore pointed out on the part of the tribunals below that any diligence in reducing to practice the subject-matter of any of the counts was accorded to the appellee.

While appellee contends that he was the first to reduce to practice the subject-matter of all the counts, and furthermore contends that he was diligent in reducing to practice his conception of the two spirally wound metallic layers of the hose called for by six of the counts involved just prior to the time appellant entered the field (irrespective of the grounds upon which the board awarded him said priority), and points to certain proven facts which he urges support this contention, we, after very careful consideration of all such facts and appellee's arguments, find ourselves in disagreement with such contentions. We do not regard such facts to be of such importance as to necessitate their being discussed in detail here.

The decision of the Board of Appeals in Patent Appeal No. 3590 and its decision in Patent Appeal No. 3591 are reversed, and priority in invention of all the counts here involved is awarded to appellant.

Reversed.